946 P.2d 750 (1997)
133 Wash.2d 433
In the Matter of the Personal Restraint of Steven R. WELL, Petitioner.
No. 64960-0.
Supreme Court of Washington, En Banc.
Argued June 11, 1997.
Decided November 13, 1997.
John H. Hertog, Jr., Seattle, for petitioner.
Jim H. Krider, Snohomish County Prosecutor, S. Aaron Fine, Deputy, Everett, for respondent.
DOLLIVER, Justice.
Petitioner claims his 1980 plea of not guilty by reason of insanity to a first degree assault charge was not knowingly and voluntarily made. Petitioner asks this court to reverse his criminal commitment and order a retrial on the 1980 charges. The State contends the relief requested is procedurally barred by RCW 10.73.090, which imposes a one-year time limit on collateral attacks. We agree with the State and dismiss the Personal Restraint Petition.
In 1980, Well, a paranoid schizophrenic, broke into his landlady's apartment and stabbed her with a knife. According to a psychiatrist who spoke with Well after the crime, Well apparently believed the landlady was invading his brain with electrical signals. Well was charged with first degree assault and first degree burglary. On April 15, 1980, Well signed a plea of not guilty by reason of insanity. Defense counsel then moved the court for acquittal by reason of insanity pursuant to RCW 10.77.080 (hereinafter referred to as an NGI plea). The trial judge accepted the motion and ordered Well to be committed to a state hospital for treatment of his paranoid schizophrenia. In 1983, Well was conditionally released, but he assaulted another *751 resident of his group home with a hammer in 1988, and his conditional release under the 1980 NGI plea was revoked. He was also charged with third degree assault for the 1988 attack, and he again entered an NGI plea. Well is currently committed at Western State Hospital (Western).
Pursuant to RCW 10.77.020(3), Well's commitment at Western cannot exceed the maximum sentence for the offense under which he was committed. First degree assault is a class A felony, which has a maximum sentence of life imprisonment. RCW 9A.36.011; RCW 9A.20.021(1)(a). The maximum sentences for the 1980 burglary charge and the 1988 assault charge have expired, such that Well's commitment is now based solely upon the 1980 first degree assault charge.
There is no evidence Well ever appealed from his 1980 commitment order, as authorized by statute. RCW 10.77.230 ("Either party may seek appellate review of the judgment of any hearing held pursuant to the provisions of this chapter."). It is unknown if he has applied for conditional or final release since his last conditional release was revoked in 1988. On April 15, 1996, Well filed this current Personal Restraint Petition (PRP) in the Court of Appeals. This appears to be Well's first PRP. The Court of Appeals certified the PRP to this court.
Well claims his NGI plea was not knowingly and voluntarily made. Under this court's unanimous decision in State v. Smith, 88 Wash.2d 639, 564 P.2d 1154 (1977), overruled by State v. Jones, 99 Wash.2d 735, 664 P.2d 1216 (1983), a trial court could unilaterally impose an NGI plea on a defendant over the defendant's objections. The court reasoned, "It would clearly be unconstitutional to permit the conviction of a defendant who was legally insane at the time of the commission of the crime." Smith, 88 Wash.2d at 643, 564 P.2d 1154. The trial procedure in Well's 1980 hearing can arguably be upheld under Smith: If a court could go so far as to impose an NGI plea over and against a defendant's explicit objection, it would seem permissible for a court to accept a defendant's NGI plea without inquiring whether the plea was knowing and voluntary.
Three years after Well's commitment, a bare majority of this court overturned Smith and held a defendant could not be criminally committed unless the NGI plea was knowingly and voluntarily made. State v. Jones, 99 Wash.2d 735, 664 P.2d 1216 (1983). Under Jones, if Well's plea was not fully knowing and voluntary, he would be entitled to a new trial. In addition to Jones, the Court of Appeals ruled in 1981 that a defendant, who was acquitted on grounds of insanity and committed to a state hospital, was entitled to have "a judgment vacated unless he understood, at the time of the motion for acquittal by reason of insanity, the nature of the charges against him and the consequences of the motion." State v. Brasel, 28 Wash.App. 303, 312, 623 P.2d 696 (1981). Well requests relief under Jones and Brasel without addressing whether the new rule of law stated in those cases should be retroactively applied to his 1980 commitment.
The State concedes Well was not advised of the consequences of his motion for acquittal by reason of insanity; but the State ignores Well's legal argument and focuses entirely on a procedural issue. The State simply claims the PRP is barred by the one-year time limit under RCW 10.73.090, and it claims none of the exceptions in RCW 10.73.100 to the time limit apply. Well's counsel admitted in his brief, and in oral argument, that he has not raised any exceptions in RCW 10.73.100.
Well makes two different claims as to why this PRP is not procedurally barred. First, he claims the statutory time limit on collateral attacks applies only to attacks on criminal convictions, not to attacks on commitment orders entered pursuant to an acquittal of a criminal charge on grounds of insanity. Secondly, he argues that, even if RCW 10.73.090 did apply, it cannot be imposed against him since the Department of Corrections never attempted to notify him of the time limit, as purportedly required by RCW 10.73.120. The State counters that notice was not required to be given to Well under RCW 10.73.120.
First Issue: Does the one-year time limit on collateral attacks (RCW 10.73.090) apply to Well's PRP?
*752 Under RAP 16.4(d), Well's PRP cannot be considered on the merits if it is procedurally barred under RCW 10.73.090, .100, and .130. RCW 10.73.130 states: "RCW 10.73.090 and 10.73.100 apply only to petitions and motions filed more than one year after July 23, 1989." Well's petition was filed long after this one-year window closed, so the one-year time limit was in effect at the time this PRP was filed. The question we must answer is whether the time limit applies to Well's PRP.
RCW 10.73.090 states, in part:
(1) No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.
Well was acquitted of a felony by reason of insanity. Since he was technically acquitted, and not convicted, Well argues RCW 10.73.090 does not apply to his personal restraint petition. He cites no authority for this proposition. RCW 10.73.090(1) makes no mention of "conviction;" rather, the subsection focuses on "judgment and sentence in a criminal case."
RCW 10.73.090 fails to define "judgment and sentence." Neither party cites any authority regarding the meaning of the words, so we resort to Webster's Third New International Dictionary (1986). The first two definitions of judgment are relevant to our analysis:
1 a: a formal utterance or pronouncing of an authoritative opinion after judging b: an opinion so pronounced; ... 2 a (1): a formal decision or determination given in a cause by a court of law or other tribunal: COURT ORDER, SENTENCE[.]
Webster's Third New International Dictionary 1223 (1986). The dictionary's first definition of sentence states:
1 a obs: a stated opinion, decision, or judgment; esp: a conclusion given on request or reached after deliberation ... b: a decision or judicial determination of a court or tribunal: DECREE: as (1): the judgment of a court pronounced in a cause in civil and admiralty law (2): the judgment passed by a court or judge on a person on trial as a criminal or offender (3): the order by which a court or judge imposes punishment or penalty upon a person found guilty; esp: the punishment or penalty so imposed[.]
Webster's at 2068.
Well was charged with first degree assault and first degree burglary. The 1980 proceeding cannot be characterized as anything other than a criminal case. Well's commitment as a result of the case is authorized under statutes concerning criminally insane persons. Chapter 10.77 RCW. In his PRP, Well collaterally attacks the outcome of his 1980 criminal case. Two documents, the Findings of Fact and Conclusions of Law (Findings), and the Order of Commitment, sum up the results of the case. The Findings express the basis for the trial court's ruling in the case:
1. The Defendant committed the acts alleged in the Information;
2. The Defendant was legally insane at the time of the commission of the acts alleged in the Information and is not legally responsible for said acts;
3. There is a substantial danger that the Defendant may injure other persons or himself unless kept under further control by the Court or other appropriate institutions;
4. There is a substantial likelihood that the Defendant may commit felonious acts jeopardizing the public safety or security unless kept under further control by the court or other appropriate institutions;
4. [sic] It is in the best interests of the Defendant and the public that the Defendant Steven R. Well, be placed in treatment at the State Mental Hospital at Western State Hospital, Fort Steilacoom, Washington.
State's Response to Personal Restraint Petition at Ex. 6. The Order of Commitment states, in part:
[I]t is further
ORDERED, ADJUDGED AND DECREED that pursuant to Findings of Fact previously entered herein, the Defendant *753 is committed to Western State Hospital as being Criminally Insane pursuant to Chapter 10.77 of the Revised Code of Washington, the Defendant to remain at Western State Hospital or such other facility as the Secretary shall designate subject only to further proceedings of this Court for conditional and/or final discharge.
State's Response to Personal Restraint Petition at Ex. 7.
These two documents clearly meet the definition of judgment, namely, "a formal utterance or pronouncing of an authoritative opinion after judging ... a formal decision or determination given in a cause by a court of law or other tribunal [.]" Webster's at 1223. The documents reflect "`the final determination of the rights of the parties to the action.'" State v. Olander, 8 Wash.App. 563, 566, 509 P.2d 60 (1973) (quoting State v. Siglea, 196 Wash. 283, 285, 82 P.2d 583 (1938) (adopting the civil rule definition of judgment for criminal cases)).
The Court's Order of Commitment also satisfies the "1 b" definition of sentence: "a decision or judicial determination of a court or tribunal: DECREE: as ... (2): the judgment passed by a court or judge on a person on trial as a criminal or offender[.]" Webster's at 2068. Well was on trial as a criminal offender. The trial court determined Well committed the criminal acts charged. It found he was insane at the time of the crime. It determined Well was dangerous to himself and others, and it determined he was likely to commit another felony if not confined for mental treatment. Well was ordered to be committed to Western as a criminally insane person under chapter 10.77 RCW, and the order states Well cannot be released except by "further proceedings of this Court." State's Response to Personal Restraint Petition at Ex. 7. The Order of Commitment is a judgment passed upon Well as a criminal offender, thereby meeting the definition of sentence.
Well's PRP attacks the judgment and sentence in his 1980 criminal case. We find the time limit imposed by RCW 10.73.090(1) applies to this PRP. Language in RCW 10.73.090(2) further supports our finding. When the Legislature drafted RCW 10.73.090, it used broad language to describe the kinds of collateral attacks restricted by the time limit:
For the purposes of this section, "collateral attack" means any form of postconviction relief other than a direct appeal. "Collateral attack" includes, but is not limited to, a personal restraint petition, a habeas corpus petition, a motion to vacate judgment, a motion to withdraw guilty plea, a motion for a new trial, and a motion to arrest judgment.
RCW 10.73.090(2). Well's PRP easily falls within the scope of this subsection.
Subsection (2) mentions personal restraint petitions as one kind of collateral attack encompassed by the statute. In the PRP, Well requests the court to "vacate the Findings of Fact, Conclusions of Law and Order of Commitment." PRP at 5. This request is essentially "a motion to vacate judgment." RCW 10.73.090(2). He requests "the opportunity for a trial," PRP at 5, which is tantamount to a "motion for a new trial." RCW 10.73.090(2). Finally, implicit in Well's PRP is a request to withdraw his 1980 plea of not guilty by reason of insanity. This is the equivalent of a "motion to withdraw guilty plea." RCW 10.73.090(2). All of the relief requested in this PRP falls within the statutory language denoting the kinds of collateral attacks to which the one-year time limit applies.
The legislative policy behind RCW 10.73.090 further supports our finding the time limit applies to Well's PRP. The time limit is a means for controlling the flow of postconviction collateral relief petitions. In re Personal Restraint of Runyan, 121 Wash.2d 432, 449, 853 P.2d 424 (1993). This court has "`observed that collateral relief undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders....'" In re Personal Restraint of Cook, 114 Wash.2d 802, 809, 792 P.2d 506 (1990) (quoting In re Personal Restraint of Hews, 99 Wash.2d 80, 86, 660 P.2d 263 (1983)).
Well's current status at Western demonstrates another argument favoring certainty *754 and finality of criminal commitments. As a result of Well's hope of winning release through this PRP, he is apparently resisting much of the treatment aimed at overcoming his mental illness. One of Well's recent progress reports points out the damage being caused:
[Well] recently stated he will sue Snohomish County for "not allowing him a jury trial" or "not reading him his [M]iranda rights." He claims he will sue Western State Hospital for alleged scars he suffered several years ago. These "scars" were not visible to a registered nurse with whom he recently discussed the matter. He remains convinced his attorney will win his release via an appeal's [sic] court decision. As a result, he resists staff efforts to persuade him to work within the structured treatment program provided at the Legal Offender Unit. He spends the majority of his leisure time isolated and withdrawn from interactions with others.
It is unfortunate that Mr. Well continues to dwell on his legal status. If he'd only spend half the energy and time he does thinking about the legal system, o[n] his treatment, he could be more successful.
State's Response to Personal Restraint Petition at Ex. 11.
Well's request for relief would require a retrial of 17-year-old criminal charges and is exactly the kind of delinquent collateral attack on a criminal proceeding that RCW 10.73.090 was designed to prevent. We find the time limit applies to his PRP. Well has not argued that his grounds for relief fall under any of the exceptions in RCW 10.73.100 to the one-year time limit; therefore, the petition is procedurally barred.
Second Issue: Was Well statutorily entitled to notice of the time limit?
When the Legislature enacted the one-year time limit, it included two statutes concerning notice of the limit. When a criminal defendant is sentenced, the judge is required to inform the defendant of the time limit in RCW 10.73.090 on collateral attacks. RCW 10.73.110. This statute was not in effect when Well was committed.
The second statute concerning notice requires the Department of Corrections to attempt to notify the following persons of the time limit: "Every person who, on July 23, 1989, is serving a term of incarceration, probation, parole, or community supervision pursuant to conviction of a felony." RCW 10.73.120.
The State argues Well does not fall under any of the categories specified in RCW 10.73.120, such that he was not statutorily entitled to notice of the time limit. We agree with the State's straightforward reading of the statute. First, Well has never been under the jurisdiction of the Department of Correctionshe has been in custody of the Department of Social and Health Services (DSHS). DSHS is not mentioned in chapter 10.73 RCW. Second, Well has not been serving a term of "incarceration, probation, parole, or community supervision;" rather, he has been committed to Western to protect the public and to help Well cure, or at least safely cope with, his mental disorder. Well does not fall within any of the classes of persons statutorily entitled to notice of the time limit.
When the Department of Corrections has not attempted to advise those in the statutorily designated class of the time limit, this court has waived application of the time limit. In re Personal Restraint of Vega, 118 Wash.2d 449, 823 P.2d 1111 (1992). If the Department has attempted to notify prisoners, the time limit will be imposed even if the prisoner did not receive actual notice. In re Personal Restraint of Runyan, 121 Wash.2d 432, 452, 853 P.2d 424 (1993). Since Well does not fall within the statutorily designated class, Vega and Runyan do not control.
Well seems to argue the time limit (RCW 10.73.090(1)) and the notice provision (RCW 10.73.120) should be read coextensively with each other. We decline to do so. While the Legislature imposed the time limit in RCW 10.73.090 on a large sea of potential collateral attacks, it cast a very narrow net into that sea with the notice provision in RCW 10.73.120. Well is an example of one person who falls under RCW 10.73.090 but is not entitled to notice under RCW 10.73.120. Another pool of persons affected by the time *755 limit, but who are not caught in the notice net, are those who were convicted of felonies and completed their sentences before July 23, 1989.
It is not uncommon for felons to challenge the validity of their earlier convictions when those convictions are used to support a habitual offender charge or used to increase their offender scores in subsequent criminal proceedings. See, e.g., Runyan, 121 Wash.2d at 437, 853 P.2d 424 (one of the three petitioners in the consolidated case was attacking prior convictions used to raise his offender score for a subsequent criminal conviction). The time limit prevents them from collaterally attacking their old convictions, and the notice provision clearly does not apply to them if they had already finished serving their sentences when the notice requirement became effective.
The notice requirement is not coextensive with the time limit. Since Well is not included in any of the categories specified in RCW 10.73.120, he is not statutorily entitled to notice. We do not rule on whether one might be constitutionally entitled to notice of the time limit, since Well did not raise any such constitutional claim.
Although we dismiss Well's PRP as procedurally barred, we feel compelled to point out Well's more direct route for relief. His commitment is not designed as punishmentit is designed to afford him the treatment necessary to allow him to regain his freedom and safely live with his mental illness. If Well successfully complies with his treatment at Western, he may, at any time, petition the DSHS for either conditional or final discharge. RCW 10.77.150(1), 10.77.200(1). Well can obtain final discharge once he demonstrates that he "no longer presents, as a result of a mental disease or defect, a substantial danger to other persons, or a substantial likelihood of committing felonious acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions." RCW 10.77.200(2). Despite our dismissal of Well's Personal Restraint Petition, we urge him to pursue his treatment and successful rehabilitation.
DURHAM, C.J., and SMITH, GUY and TALMADGE, JJ., concur.
SANDERS, Justice (dissenting).
Steven Well asserts he was unlawfully committed to a mental hospital 17 years ago and petitions for release. The State concedes the commitment was unlawful. See State's Br. in Opp'n to Personal Restraint Pet. (Opp'n) at 9 ("If this court could consider the petition [on the merits], the State concedes that the Order of Commitment could not be upheld.").[1] However, the majority refuses the writ regardless of its merit upon the claim it is procedurally barred by RCW 10.73.090, more than one year having lapsed since July 23, 1989, the effective date of Laws of 1989, ch. 395.
In 1989 the Washington State Legislature substantially amended RCW 10.73, entitled "criminal appeals," through the adoption of Substitute House Bill 1071 comprising chapter 395 of the 1989 regular session laws. Of particular relevance here are sections 1 (codified in RCW 10.73.090) and 5 (codified as RCW 10.73.120):
Sec. 1. (1) No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final *756 if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.
(2) For the purposes of this section, "collateral attack" means any form of postconviction relief other than a direct appeal. "Collateral attack" includes, but is not limited to, a personal restraint petition, a habeas corpus petition, a motion to vacate judgment, a motion to withdraw a guilty plea, a motion for a new trial, and a motion to arrest judgment.
(3) For the purposes of this section, a judgment becomes final on the last of the following dates:
. . . .
(c) The date that the United States Supreme Court denies a timely petition for certiorari to review a decision affirming the conviction on direct appeal....
Sec. 5. As soon as practicable after the effective date of this section, the department of corrections shall attempt to advise the following persons of the time limit specified in sections 1 and 2 of this act: Every person who, on the effective date of this section[ July 23, 1989], is serving a term of incarceration, probation, parole, or community supervision pursuant to conviction of a felony.
Laws of 1989, ch. 395. (Emphasis added.)
In answer to the claim his petition is time barred Well claims: "It is clear that the one-year bar applies only to persons who have been convicted of criminal offenses." Well's Reply Br. to Opp'n at 3.1 agree.
This petition is not time barred by the literal statutory text, nor when construed according to the ordinary rules of statutory construction. Moreover, the nature and importance of the writ of habeas corpus emphasizes the view that statutory language should not be twisted and strained to defeat it. I must disagree with a majority that chastises Mr. Well for undertaking reasonable legal efforts to protect his perceived constitutional and legal rights, notwithstanding the claim of his psychiatrists that his natural desire to vindicate his rights is inconsistent with the possible fruits of a coerced regime of treatment. See Majority at 753.

Statutory Text
Maxims of statutory construction require we understand and apply statutes in accordance with the ordinary meaning of the words contained therein in pari materia with their context. Monroe v. Soliz, 132 Wash.2d 414, 425, 939 P.2d 205 (1997) (amended Jul. 15, 1997) ("When `statutes relate to the same thing or class, they are in pari materia and must be harmonized if possible.'") (quoting King County v. Taxpayers, 104 Wash.2d 1, 9, 700 P.2d 1143 (1985)). As this is a criminal matter we must also honor the rule of lenity which requires that construction most favorable to the accused. State v. Lively, 130 Wash.2d 1, 14, 921 P.2d 1035 (1996) ("The rule of lenity provides that where an ambiguous statute has two possible interpretations, the statute is to be strictly construed in favor of the defendant.") (citing State v. Gore, 101 Wash.2d 481, 486, 681 P.2d 227 (1984) and State v. Sass, 94 Wash.2d 721, 726, 620 P.2d 79 (1980)).

Sentence vs. Commitment
Although this is a "criminal case" which resulted in a "judgment," the statute applies by its terms only to the situation where there is also a "sentence" and a petition for "postconviction" relief. "Sentence" means the punishment "formally pronounced by the court or judge upon the defendant after his conviction in a criminal prosecution...." Black's Law Dictionary 1362 (6th ed.1990). The sentencing laws in effect at all times material hereto link and limit "sentence" to "conviction." See, e.g., RCW 9.92.010. On the other hand those adjudicated "criminally insane" pursuant to RCW 10.77 are not "sentenced" but rather "committed."
This distinction may make little difference to Mr. Well; however, it is firmly established in the law. The only time "sentence" appears in the chapter on the criminally insane is that section which provides when one is acquitted by reason of insanity "such commitment or treatment cannot exceed the maximum possible penal sentence for [the] offense charged...." RCW 10.77.020(3). Thus, the Legislature has clearly distinguished between commitment and sentence *757 with those incarcerated as criminally insane being members of the former, not latter, category. See State v. Sommerville, 111 Wash.2d 524, 534-36, 760 P.2d 932 (1988) (statutory distinction between criminal sentencing and mental illness commitment applied).
This court has diligently maintained the distinction between commitment and sentence at the expense of broader rights to those committed on mental illness grounds. See, e.g., In re Young, 122 Wash.2d 1, 857 P.2d 989 (1993) (person committed as sex offender lacks rights of criminal defendant because the incarceration is civil and remedial in nature and is not punishment pursuant to a conviction and sentence). If the distinction between sentence and commitment were to be abandoned as illusory, it should be consistently so. In that event there would be no reason to distinguish the meaning of "sentence" for the purposes of the time bar statute and criminal sentencing statutes (e.g., RCW 9.94A) from mental illness "commitment" statutes (e.g., RCW 10.77). But the distinction has been abandoned neither by the Legislature nor this court.

Conviction vs. Acquittal
If reliance on the term "sentence" were insufficient to prove Well's point, the term "postconviction" or "conviction" permits no denial. Unless words have lost their meaning, conviction and acquittal are opposites which cannot coexist in harmony. By definition one who is committed as "criminally insane" is a "person who has been acquitted of a crime charged by reason of insanity...." (RCW 10.77.010(1)) (emphasis added). By operation of law the one-year time bar applies only to "collateral attack," statutorily defined as "any form of postconviction relief...." RCW 10.73.090(2). Even the definition of final judgment for the purpose of this statute is keyed upon Supreme Court denial of a timely petition for certiorari "affirming the conviction on direct appeal." RCW 10.73.090(3)(c).
The notice provision of the same enactment (section 5) codified in RCW 10.73.120 specifically mandates notice be given to "[e]very person who, on July 23, 1989, is serving a term of incarceration, probation, parole, or community supervision pursuant to conviction of a felony." As previously noted, this notice provision in Section 5 is inextricably linked to the one-year time bar which appears in Section 1 (Laws of 1989, ch. 395, §§ 1, 5). If we read these sections in pari materia, the conclusion is unmistakable that the same class of people subject to the time bar are equally privileged to the notice, i.e., convicted felons, and vice versa.[2]
Were the statute construed to time bar petitions for relief from those committed by reason of a not-guilty-by-reason-of-insanity plea there is no apparent reason why the Legislature would rationally withhold from these same individuals that notice otherwise required to be furnished to their criminal counterparts. Moreover, were we to read the statute as does the majority (time bar yes, notice no), this disparity might well lead to statutory invalidation on equal protection grounds. Compare Morris v. Blaker, 118 Wash.2d 133, 147-48, 821 P.2d 482 (1992) (no rational basis to treat former mental patients differently from felons for purposes of allowing them to show they are sufficiently cured to possess a firearm).[3] Such a construction is not preferred because it would violate the maxim that the statute should be construed in a constitutional manner if possible. State v. Rohrich, 132 Wash.2d 472, 939 P.2d 697 (1997).

Legislative History
The court may consider the legislative history of an enactment to explain ambiguities if they exist. State v. Bash, 130 Wash.2d 594, 601, 925 P.2d 978 (1996) ("The court has frequently looked to final bill reports as part of an inquiry into legislative history.") (citing State v. Silva-Baltazar, 125 Wash.2d 472, 479, 886 P.2d 138 (1994)). Research discloses *758 the subject enactment was first introduced in the form of House Bill 1071 in the 1989 regular session of the Legislature and was ultimately adopted as amended in SHB 1071, 51st Leg., Regular Session (Wa.1989). The outline of testimony before the house judiciary committee on January 24, 1989 in support of HB 1071 as prepared by the Snohomish County Prosecuting Attorney shows no reference to those committed to a mental institution on a not-guilty-by-reasonof-insanity plea. The House Bill Report, the Senate Bill Report, and the Final Bill Report, without exception, reference defendants "convicted of a crime," not persons who may be committed as the result of an insanity acquittal. There is not one word of legislative history supportive of, or even consistent with, the majority's bizarre claim that those committed under an insanity plea are subject to the one-year time bar, much less exempt from the statutory notice. We have previously held time is no bar where the notice has been omitted, thus linking by precedent what is obviously linked by statutory text and reason. In re Vega, 118 Wash.2d 449, 451, 823 P.2d 1111 (1992).
Neither the statutory text nor context, nor the legislative history of this enactment supports the proposition that mental patients committed on a plea of not-guilty-by-reasonof-insanity are subject to the time bar or notice requirements of this statute.

The Great Writ of Antiquity
The majority's treatment of this subject prompts special concern because it arises in the context of an admittedly meritorious petition for writ of habeas corpus. We recognize a rule of construction which strictly construes statutes which trench upon liberty. In re Detention of J.R., 80 Wash.App. 947, 956, 912 P.2d 1062 (1996) ("As civil commitment statutes authorize a significant deprivation of liberty, they must be strictly construed.") (citing In re Swanson, 115 Wash.2d 21, 27, 793 P.2d 962, 804 P.2d 1 (1990) and In re LaBelle, 107 Wash.2d 196, 205, 728 P.2d 138 (1986)); In re Swanson, 115 Wash.2d at 31, 793 P.2d 962, 804 P.2d 1 ("In light of the clear language of the statute and Washington case law concerning statutes impacting liberty interests, the time limits at issue [in this civil commitment] must be strictly construed."); Dunner v. McLaughlin, 100 Wash.2d 832, 850, 676 P.2d 444 (1984) ("[S]tatutes that involve a deprivation of liberty are to be strictly construed.") (citing In re Cross, 99 Wash.2d 373, 379, 662 P.2d 828 (1983)).
Habeas corpus review requires the court to examine the "`legality of an individual's confinement,' thereby insuring the `integrity of the process resulting in imprisonment.'"[4] At the heart of habeas corpus is the principle "that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment...." Fay v. Noia, 372 U.S. 391, 402, 83 S.Ct. 822, 829, 9 L.Ed.2d 837 (1963). Our courts have long hailed the writ of habeas corpus as "the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." Harris v. Nelson, 394 U.S. 286, 290-291, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969). Our jurisdiction likewise acknowledges the fundamental importance of habeas corpus as the state constitution expressly guarantees the writ's availability,[5] while our courts reference it as "the Great Writ of antiquity...."[6] The Supreme Court has avowed "there is no higher duty than to maintain [habeas corpus] unimpaired." Bowen v. Johnston, 306 U.S. 19, 26, 59 S.Ct. 442, 446, 83 L.Ed. 455 (1939). Equally, no higher duty befits our court than to deliver up the man unlawfully confined.[7] I would therefore, *759 at minimum, not strain the statute to deny this or any man the benefit of the writ of habeas corpus. Unfortunately, and gratuitously, the majority does exactly that.

Faulting Mental Patients for Attempting to Defend Their Legal Rights
Let us recall Mr. Well seeks relief, or at least his day in court, after the better part of 17 years' incarceration in a mental hospital. Had he been found guilty of first degree assault in 1980 after a trial, or even a plea of guilty, chances are he would have been released years ago.[8] Yet Mr. Well continues his incarceration in a mental hospital for the maximum term of life! Given this scenario the majority's opinion appears to give this court's imprimatur to a psychiatric report which criticizes Mr. Well for stating he wants to sue Snohomish County for violating his legal rights and because he continues to maintain his apparently forlorn hope that "`his attorney will win his release via an appeal's [sic] court decision,'" opining "`[i]t is unfortunate that Mr. Well continues to dwell on his legal status....'" Majority at 753 (quoting State's Response to Personal Restraint Petition at Ex. 11).
I assume the mental health professionals who authored and approved this report were simply stating their sincere belief, if not considered professional judgment, that Mr. Well would be the greater beneficiary of their services were he to be liberated from the distractions of our legal system which at least provide hope for eventual release. With all due respect I would counsel these professionals, if only in dissent, that their relation to Mr. Well under these involuntary and coercive circumstances must in reality be likened not only to a physician-patient relationship but also to one between a jailer and inmate. It is only reasonable that Mr. Well would seek his release through lawful means. Indeed, it might be evidence of mental illness if he did not. Be that as it may, it is hoped his custodians would credit this man with the legal rights he does still possess and willingly, if not gratefully, accept their own responsibility to facilitate their exercise. Such is, or should be, a privilege for those in positions of public responsibility.
In conclusion the majority offers Mr. Well the gratuitous advice that "[h]is commitment is not designed as punishment" and that he might be able to obtain his release "once he demonstrates that he `no longer presents, as a result of a mental disease or defect, a substantial danger to other persons....'" Majority at 755 (quoting RCW 10.77.200(2)).
How Mr. Well should "demonstrate" that he no longer presents a danger as the result of a mental defect is not, however, explained.
Indeed the task may be quite impossible. Not only does logic preclude proof of a negative but to even begin he would be forced to rely on two questionable, but implicit, assumptions:' (1) mental disease causes dangerousness and (2) dangerousness is subject to reasonable prediction. Concomitantly, if future dangerousness as the result of a mental disorder cannot be reliably and validly predicted then it would seem virtually impossible to demonstrate, as the majority suggests, that one "no longer presents, as a result of a mental disease or defect, a substantial danger to other persons...." Id. Compare In re Harris, 98 Wash.2d 276, 281, 654 P.2d 109 (1982) (recognizing even American Psychiatric Association has confessed the profession's inability to predict dangerousness, referencing scholarly articles). Although restoration of sanity to the system (and perhaps Mr. Well) is beyond the power of this dissent, to admonish Mr. Well for not taking additional steps to treat a condition, or the symptom of a condition, which cannot reasonably be demonstrated to exist in the first instance seems amiss.

Conclusion
I conclude the statutory time bar is inapplicable to mental patients incarcerated as a result of the court's acceptance of their notguilty-by-reason-of-insanity plea and dissent.
MADSEN, J., concurs.
*760 ALEXANDER, Justice (concurring in dissent).
I concur with the views that Justice Sanders has set forth in his dissent. I write separately only to emphasize what, in my view, is an internal inconsistency in the majority opinion. In holding that Well is procedurally barred from collaterally attacking his commitment to Western State Hospital, the majority concludes that the order of commitment was "passed upon Well as a criminal offender," and thereby meets the definition of "sentence." Majority op. at 753. In support of that determination, the majority relies upon a standard dictionary definition of the word "sentence" as "the judgment passed by a court or judge on a person on trial as a criminal or offender (3): the order by which a court or judge imposes punishment or penalty upon a person found guilty; esp: the punishment or penalty so imposed [.]" Majority op. at 752 (quoting Webster's Third New International Dictionary 2068 (3d ed.1986)). Inexplicably, the majority follows its conclusion that Well was sentenced, with a holding that Well was not entitled to the statutory notice of the one-year time limit on collateral attacks because he is not "serving a term of `incarceration'." Majority op. at 754.
If, as the majority holds, Well was sentenced to Western State Hospital as punishment because he is an offender, then it follows that he is incarcerated and was, therefore, entitled to receive notice of the time limit for collaterally attacking the sentence. On the other hand, if he was not incarcerated, as it also holds, he is not being punished or penalized and the statutory bar to collateral attacks does not apply to him. In either case, Well's personal restraint petition is not time barred.
JOHNSON, J., concurs.
NOTES
[1] Well is detained pursuant to a plea of not guilty by reason of insanity. Such plea is only valid if voluntarily given. State v. Jones, 99 Wash.2d 735, 664 P.2d 1216 (1983). The plea is not voluntary if the person who made it was unaware of the consequences. State v. Brasel, 28 Wash.App. 303, 313, 623 P.2d 696 (1981). An involuntary plea may be withdrawn. Jones, 99 Wash.2d at 747, 664 P.2d 1216. Here, Well was not informed of and did not know the consequences of his plea and has elected to withdraw it, rendering continued detention unlawful. The State concedes in its brief:

[T]he petitioner claims that he was not properly advised of the consequences of a motion for acquittal by reason of insanity. The State agrees that the record does not reflect any such advice. If the petition were timely, he would therefore be entitled to have the judgment of acquittal vacated. See State v. Brasel, 28 Wash.App. 303, 312-13, 623 P.2d 696 (1981).
State's Br. in Opp'n to Personal Restraint Pet. at 10.
[2] With one exception: Those convicted of misdemeanors usually need no notice since their incarceration is usually one year or less.
[3] I do not determine this question here because it has not been raised by the partiesand understandably so since they are not privy to the majority opinion before it is written.
[4] Angela Carson, Note and Comment, Lonchar v. Thomas: Protecting the Great Writ, 13 Ga. St. U.L.Rev. 809, 815 (1997) (quoting William F. Duker, A Constitutional History of Habeas Corpus 3 (1980)).
[5] Article I, § 13 provides in full: "The privilege of the writ of habeas corpus shall not be suspended, unless in case of rebellion or invasion the public safety requires it."
[6] Toliver v. Olsen, 109 Wash.2d 607, 608, 746 P.2d 809 (1987).
[7] Blackstone referred to habeas corpus as "the most celebrated writ in the English law" and the Supreme Court agrees. Fay v. Noia, 372 U.S. 391, 399-400, 83 S.Ct. 822, 827-28, 9 L.Ed.2d 837 (1963) (quoting "3 Blackstone Commentaries 129").
[8] Current Sentence Reform Act guidelines, if applied to Well, would yield a standard range sentence of about nine years, assuming a "0" offender score. RCW 9.94A.310.