[No. 19263-6-III. Division Three. August 7, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. SIDNEY A. HURT, *Appellant*.

818

*Hugh M. Spall, Jr.*, for appellant.

*Gregory L. Zempel, Prosecuting Attorney*, and *Laura C. Hooper, Deputy*, for respondent.

SWEENEY, J. — Under the federal "mailbox rule" pleadings are deemed "filed" when they are properly deposited in a prison mailing system. *Houston v. Lack*, 487 U.S. 266, 271, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988). The first question raised in Sidney Hurt's collateral attack on his guilty plea is whether Washington should adopt the federal "mailbox rule" for pro se, incarcerated petitioners. We conclude that it should and do so here.

The next question is whether a statement on plea of guilty that informed Mr. Hurt that his community placement would be at least one year adequately informed him of the direct consequences of his plea, when the required community placement was actually at least two years. We conclude that the plea form did not adequately inform Mr. Hurt of the direct consequences of his plea. And we therefore reverse the trial court's order denying Mr. Hurt's motion to withdraw his plea.

## FACTS

Mr. Hurt was charged with vehicular homicide by driving under the influence (RCW 46.61.520(1)(a)) after his passenger was killed in a car crash. Both men were intoxicated. Mr. Hurt was driving.

He entered an *Alford*[1] plea. The plea form he signed was out of date. The form said the court would impose community placement of at least one year. The statutory minimum was actually two years for vehicular homicide. The State recommended the low end of the standard range, 129 months. The court sentenced Mr. Hurt to the high end, 171 months, plus the two years of community placement, plus restitution.

The amount of restitution was not entered until sentencing, some days after the plea was entered. The amount included $12,175.75 to reimburse the state agency that advanced funds to the victim's family to cover medical and funeral expenses; $2,250.00 to the family directly for additional expenses not included in the advance; and $500.00 victim assessment.

The court entered the judgment and sentence on August 7, 1998. In January 1999, the front page of the judgment and sentence was amended to change the spelling of Mr. Hurt's first name from Sydney to Sidney.

Incarcerated and acting pro se, Mr. Hurt mailed a motion

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

to withdraw his plea on August 3, 1999, to the Kittitas County Superior Court. He also submitted a sworn declaration that he mailed the motion on August 3. The motion was received by the Kittitas County Clerk on August 10.

Mr. Hurt claims his plea was involuntary because he was not properly informed of the consequences of the plea, namely, the minimum amount of community placement. He also asserted that the amount of restitution was more than he could have anticipated. He claimed he would not have pleaded guilty had he been properly informed about the restitution before the sentencing hearing. Several months later, Mr. Hurt amended his motion to include a claim of ineffective assistance of counsel.

Following a hearing, the trial court concluded that Mr. Hurt's collateral challenge was technically late. Even so, the court went on to decide that his plea was knowing and voluntary with respect to both community placement and restitution, and that Mr. Hurt had failed to make a showing that his representation was deficient. The court then denied his motion to withdraw the plea.

## MAILBOX RULE

The federal mailbox rule deems pro se incarcerated defendants' pleadings as "filed" at the time they are deposited for mailing in prison, instead of when the court clerk receives or stamps them. *Houston*, 487 U.S. 266. Mr. Hurt urges us to adopt the mailbox rule. This is an issue of first impression.

APPEALABILITY

■ Mr. Hurt mailed his motion August 3. The one-year deadline for a collateral challenge of the conviction was August 7. The court received and filed the motion on August 10. The trial court did not, however, dismiss this motion as untimely. It ruled instead on the merits. But the timeliness issue is not moot. Mr. Hurt presents a substantive challenge to the voluntariness of his plea, which we can address

only if the motion is not procedurally barred.

Mr. Hurt did not argue his mailbox rule theory before the trial court. His only argument was that the one-year statute of limitations did not start to run until the amended judgment was filed in January 1999. Mr. Hurt abandons this argument on appeal.

■ We ordinarily do not consider arguments offered for the first time on appeal. RAP 2.5(a); *State v. Riley*, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993). But RAP 2.5(a) is discretionary, not absolute, and does not bar review of an issue first raised on appeal. *State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d 452 (1999). And this is a question of some moment that deserves a definitive answer.

STANDARD OF REVIEW

■ A motion to withdraw a guilty plea is governed by CrR 7.8(b). We review the decision for abuse of discretion. *State v. Olivera-Avila*, 89 Wn. App. 313, 317, 949 P.2d 824 (1997). Mr. Hurt asks us to review the trial court's interpretation of RCW 10.73.090(1). We review the trial court's interpretation of statutes de novo. *State v. Avila*, 102 Wn. App. 882, 888, 10 P.3d 486 (2000), *review denied*, 143 Wn.2d 1009 (2001).

RCW 10.73.090

A motion for relief from judgment in a criminal case must be made within one year. CrR 7.8(b); RCW 10.73.090(1); *Olivera-Avila*, 89 Wn. App. at 317.

> No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.

RCW 10.73.090(1).

The statute recognizes certain exceptions to this deadline. RCW 10.73.100. But Mr. Hurt does not claim any.

FEDERAL PRACTICE

■ No Washington case is directly on point. We look then to decisions analyzing corresponding federal law for guid-

ance in the absence of Washington cases. *Turner v. Kohler*, 54 Wn. App. 688, 693-94, 775 P.2d 474 (1989) (citing *Rinke v. Johns-Manville Corp.*, 47 Wn. App. 222, 225, 734 P.2d 533 (1987)). Federal collateral attack time limitation law is analogous to Washington's. Federal cases are both instructive and highly persuasive. Mark A. Wilner, Notes & Comments, *Justice at the Margins: Equitable Tolling of Washington's Deadline for Filing Collateral Attacks on Criminal Judgments*, 75 Wash. L. Rev. 675, 702 (2000).

The federal courts have adopted a mailbox filing rule for pro se incarcerated defendants seeking postconviction relief. *Houston v. Lack*, 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988). In *Houston*, the Court noted that the federal rule for filing appeals did not define what constituted filing. Neither did the rule designate where or with whom the appeal must be filed. *Id.* at 272. The Court observed that courts generally deem appeals filed when received, not when formally stamped "filed." *Id.* at 272-73. This is because, once delivered to the court, the filing is beyond the control of the litigant. *Id.* at 270-71. The Court reasoned that the same considerations applied to incarcerated pro se defendants. They have no choice but to entrust the fate of their petitions to prison authorities who are beyond their control or supervision and who "may have every incentive to delay." *Id.* at 271.

The federal court rules incorporated the prison mailbox rule for the filing of appeals by incarcerated pro se defendants:

**Appeal by an Inmate Confined in an Institution.**

(1) If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing.

Fed. R. App. P. 4(c). This was in direct response to *Houston*. Fed. R. App. P. 4(c) advisory committee notes.

The federal courts uniformly apply the *Houston* mailbox

rule whenever a filing statute or rule is ambiguous enough to permit this construction. *Nigro v. Sullivan*, 40 F.3d 990, 994 (9th Cir. 1994). The reasoning of *Houston* has been extended to include the one-year filing deadline of federal habeas corpus petitions. *Burns v. Morton*, 134 F.3d 109 (3d Cir. 1998). *Burns* cites additional instances of federal filing deadlines encompassed by the *Houston* rule. These include 42 U.S.C. § 1983 complaints, and motions to extend the time to correct filing deficiencies. Cases cited at *Burns*, 134 F.3d at 112-13. The Ninth Circuit has further extended the *Houston* rule to civil filings by pro se prisoners; for example, Fed. R. Civ. P. 5(b) (commencement of civil action) and Fed. R. Civ. P. 33 and 34 (discovery). *Nigro*, 40 F.3d at 994. *See also Murrell v. Bennett*, 615 F.2d 306, 310 (5th Cir. 1980) (discovery).

The lesson of these cases is that whenever the rule or statute does not explicitly preclude it, the *Houston* rule is applied. *Nigro*, 40 F.3d at 994.

Mr. Hurt contends that CrR 7.8(b) is comparable to the federal rule, and that the same public policy and equal protection considerations therefore apply. He urges us to adopt the federal practice and interpret the loosely-defined "filed" so as to put incarcerated pro se defendants in the same position as nonincarcerated petitioners or those with counsel, each of whom can monitor the progress of a last-minute filing and ensure its timeliness. To do otherwise, he contends, effectively shortens the statute of limitations for unrepresented people in prison.

OTHER STATES

*Houston* interprets a federal statute, not the Constitution. It is not, therefore, binding on state courts. *State v. Smith*, 123 Ohio App. 3d 48, 50, 702 N.E.2d 1245, 1246 (1997). Nonetheless state courts do follow the rule. *E.g.*, *Hickey v. Or. State Penitentiary*, 127 Or. App. 727, 874 P.2d 102 (1994); *Kinnard v. Carnahan*, 25 S.W.3d 266 (Tex. Ct. App. 2000) (civil action by pro se prisoner). The states do, however, give effect to any language in their state laws that precludes such an interpretation. *State v. Parmar*, 255 Neb.

356, 362, 586 N.W.2d 279, 283 (1998) (filing procedure is jurisdictional; petition must be filed in the office of the clerk of the district court); *Grant v. Senkowski*, 95 N.Y.2d 605, 608, 744 N.E.2d 132, 134, 721 N.Y.S.2d 597 (2001) (statute defines term "filing" as delivery to court clerk); *Smith*, 702 N.E.2d at 1246 (postconviction relief petition must be filed with the court).

WASHINGTON

Here in Washington the governing court rule is CrR 7.8(b), motion for relief from judgment. That rule does not define when a motion is filed or designate the person with whom it must be filed. It says only that a motion "shall be made within a reasonable time" and is further subject to RCW 10.73.090. RCW 10.73.090(1), in turn, just says that the collateral challenge must be filed within one year after the judgment becomes final. It does not define "filing" or specify that the filing must be with the court or any particular place.

Washington courts have generally strictly construed RCW 10.73.090 in light of the legislative intent to control the flow of postconviction collateral relief petitions and to uphold the principles of finality of litigation. *See, e.g., Shumway v. Payne*, 136 Wn.2d 383, 397-98, 964 P.2d 349 (1998) (only exceptions to one-year statute of limitations are those listed in RCW 10.73.100); *In re Pers. Restraint of Well*, 133 Wn.2d 433, 441-42, 946 P.2d 750 (1997) (motion to withdraw insanity plea). Division One of this court has declined to recognize substantial compliance with the collateral attack deadline, applying the general rule that there can be no substantial compliance with deadlines, which either are actually met or they are not. *State v. Robinson*, 104 Wn. App. 657, 666-67, 17 P.3d 653 (2001).

Our Supreme Court has taken judicial notice of the limited resources available to prisoners for pro se legal work. *State v. Theobald*, 78 Wn.2d 184, 185-86, 470 P.2d 188 (1970). And in *Whitney v. Buckner*, the court reinstated a civil action dismissed when the pro se incarcerated plaintiff failed to comply with a local court rule that pleadings be

filed in person. *Whitney v. Buckner*, 107 Wn.2d 861, 734 P.2d 485 (1987). The court held that due process required that indigent prisoners have meaningful access to the courts. *Id.* at 869.

Division One of this court also recognizes federal decisions showing leniency to pro se prisoners who do not technically comply with the rules. *Turner*, 54 Wn. App. at 694. But the federal holdings were not deemed germane in *Turner*. *Id.* at 695.

CONSTITUTIONAL CONSIDERATIONS

██ ██ The right to petition for postconviction relief is of fundamental constitutional importance. It enables those unlawfully incarcerated to obtain their freedom. Access of prisoners to the courts for the purpose of presenting their complaints should not be denied or obstructed. *Wolff v. McDonnell*, 418 U.S. 539, 578, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974).

Mr. Hurt cites to *Lucey v. Kavanaugh* for the proposition that due process and equal protection demand the result he seeks. *Lucey v. Kavanaugh*, 724 F.2d 560 (6th Cir. 1984), *aff'd sub nom. Evitts v. Lucey*, 469 U.S. 387, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). But *Kavanaugh* is distinguishable. That was a federal habeas corpus case. The petitioner's lawyer neglected to file the petitioner's state appeal—a violation of his Sixth Amendment right to counsel. *Id.* at 562. It was the denial of effective assistance that violated the Constitution—not the court rule requiring timely filing of the appeal.

Nevertheless, Washington courts balance the due process right of prisoners to meaningful access to the courts against the weight of the State's countervailing interest. *Whitney*, 107 Wn.2d at 866.

The State advances the countervailing public interest in finality for victims and avoiding loss of evidence and witnesses for the State. But it is difficult for us to see how these interests will be affected by adding a couple of days to the timeliness of what we presume will be only a handful of

cases. Some system for logging outgoing prison mail would resolve any difficulty in documenting when these petitions were sent. *Woody v. State ex rel. Dep't of Corr.*, 1992 OK 45, 833 P.2d 257, 259.

EQUAL PROTECTION

Mr. Hurt argues that any other rule is a denial of his right to equal protection. The State responds that the public's interest is best served by preserving the status quo.

■ A discriminatory denial of the right of appeal violates the equal protection clause of the Fourteenth Amendment. *Dowd v. United States ex rel. Cook*, 340 U.S. 206, 208, 71 S. Ct. 262, 95 L. Ed. 215 (1951).

*Houston* makes the point in terms of general fairness: "[I]f other litigants do choose to use the mail, . . . they can follow its progress by calling the court . . . knowing that if the mail goes awry they can personally deliver notice at the last moment . . . ." *Houston*, 487 U.S. at 271. Therefore, fairness requires that notices of appeal be deemed filed when timely deposited for mailing by those prisoners who cannot otherwise get their petitions in under the wire. *Id.* at 270-71.

In the Florida case of *Haag v. State*, the court applied *Houston* on almost identical facts to those before us. *Haag v. State*, 591 So. 2d 614, 616-17 (Fla. 1992). *Haag* involved a pro se prisoner who deposited a motion for postconviction relief with prison officials five days before its due date. But it was not stamped "filed" by the court clerk until four days after the time limit had run. *Id.* at 616. The Florida court held that the mailbox rule protected the pro se prisoner's equal protection rights. *Id.* at 617. It noted that if two prisoners facing the same deadline delivered documents at the same time to prison officials, and if random circumstances prevented one set of documents from arriving timely, one prisoner would obtain a full hearing and the other would be denied relief. *Id.* The court held that the fundamental guaranties of equal protection and access to courts should be available through simple and direct

means, free from technicalities that defeat these protections. *Id*. The court found *Houston* consistent with the Florida Constitution. *Id*.

■ The rationale underlying *Houston* is compelling. CrR 7.8(b) accommodates a mailbox rule for incarcerated pro se defendants. And RCW 10.73.090 does not preclude such a rule. Neither CrR 7.8(b) nor RCW 10.73.090 defines filing.

We hold then that Mr. Hurt's motion was filed when he deposited it in the prison mailing system.

## ADEQUACY OF STATEMENT ON PLEA OF GUILTY— COMMUNITY PLACEMENT

Mr. Hurt's mandatory minimum community placement was two years. Former RCW 9.94A.120(9)(b) (1997). The statement on plea of guilty form states the court will impose mandatory community placement of at least one year. Mr. Hurt concluded this meant that one year was the minimum. *State v. Ross*, 129 Wn.2d 279, 285, 287-88, 916 P.2d 405 (1996).

The State concedes that a voluntary guilty plea requires that the defendant be told about mandatory community placement. The State also concedes that Mr. Hurt's plea form was old and did not reflect increased mandatory minimum community placement for vehicular homicide. But by informing him he was subject to community placement for "at least 1 year," the State contends it put him on notice that he might get two years. Clerk's Papers (CP) at 6. Of course, logically "at least one" includes more than one, i.e., maybe two.

STANDARD OF REVIEW

■ We review the trial court's denial of a motion to withdraw a plea for abuse of discretion. *State v. Martinez-Lazo*, 100 Wn. App. 869, 872, 999 P.2d 1275, *review denied*, 142 Wn.2d 1003 (2000). The court abuses its discretion if it bases its decision on clearly untenable or manifestly unreasonable grounds. *State v. Olmsted*, 70 Wn.2d 116, 119, 422 P.2d 312 (1966).

■ ■ A motion to withdraw a guilty plea may be granted to correct a manifest injustice. CrR 4.2(f); *Ross*, 129 Wn.2d at 283. The defendant has the burden of proving manifest injustice. *Id.* at 283-84. Manifest injustice is proved by a showing that the plea is involuntary. *State v. Saas*, 118 Wn.2d 37, 42, 820 P.2d 505 (1991); *State v. Taylor*, 83 Wn.2d 594, 597, 521 P.2d 699 (1974).

BURDEN OF PROOF

■ Unless it is apparent from the record of the plea hearing that the plea was voluntary and intelligent, the State has the burden of proving the validity of the plea. *Ross*, 129 Wn.2d at 287; *Wood v. Morris*, 87 Wn.2d 501, 507, 554 P.2d 1032 (1976).

The plea form here misrepresents the minimum community placement as one year. The court did not discuss sentencing at the hearing.

■ Community placement counts as punishment. *Ross*, 129 Wn.2d at 286. It is no less restrictive of liberty than incarceration. *Id.* at 286-87. The offender may be ordered by the court to report to a community corrections officer; undertake specific employment or occupation, study, or training; observe prescribed geographical boundaries; report any change of address or employment; submit to medical treatment; abstain from controlled substances and alcohol; and pay supervision fees. Former RCW 9.94A-.120(9)(b), (c) (1997); *Ross*, 129 Wn.2d at 281.

■ Community placement time counts toward the statutory maximum sentence. *Ross*, 129 Wn.2d at 286. Mandatory community placement is thus a direct consequence of the plea that must be communicated. *State v. Acevedo*, 137 Wn.2d 179, 192, 970 P.2d 299 (1999).

■ ■ The mandatory community placement is supposed to be in the plea form. *Ross*, 129 Wn.2d at 282. In *Ross*, the outdated plea form contained no warning of community placement whatsoever. *Id.* at 282-83. Also, the court did not address the issue during oral colloquy. *Id.* at

283. The outdated plea agreement Mr. Hurt signed does warn that mandatory community placement is part of the sentence. However, like the form in *Ross*, it underestimates by one year the mandatory community placement to which the defendant is agreeing by signing the form. Mr. Hurt's court did not address the sentencing range at oral colloquy either. The correct information has since been added to the form: "If this crime is a vehicular homicide . . . the judge will order me to serve at least two years of community placement." CrR 4.2(g) (sample form at 6(f)).

The defendant must be informed of all direct consequences of a guilty plea. CrR 4.2(d); *Wood*, 87 Wn.2d at 510. In accepting the plea, the court entered the standard finding that the defendant understands the consequences of the plea. CP at 7. Here, the court also made a bench finding that the defendant understood the consequences of the plea. Report of Proceedings (Aug. 3, 1998) at 10. However, neither the plea form nor the judge informed Mr. Hurt that community placement would be at least two years.

This results in an involuntary plea as a matter of law. Absent correct information of the consequences, the defendant is incapable of entering a knowing, intelligent, and voluntary plea. *Ross*, 129 Wn.2d at 288.

## RESTITUTION INFORMATION

 Mr. Hurt also argues that his guilty plea was not voluntary because he was not informed of the specifics of his restitution.

Former RCW 9.94A.142(4) (1997) provides for restitution where the victim is entitled to benefits under the Crime Victims' Compensation Act, chapter 7.68 RCW. *State v. Reed*, 103 Wn. App. 261, 265, 12 P.3d 151 (2000). RCW 7.68.120 provides for reimbursement to the crime victims' compensation fund.

Here, the state fund paid the victim's family over $12,000, which Mr. Hurt was required to pay back to the fund. An additional $2,250 went directly to the family to

cover losses not covered by the fund. All the money, however, went to the family.

The usual procedure is for the precise amount of restitution to be determined at the time of sentencing, or within a given period thereafter. This is what the statute contemplates. RCW 9.94A.140(1). Mr. Hurt was told he would be required to compensate the victim's family for their medical, funeral, and similar expenses. That is enough to support the guilty plea. The fact that the family had received an advance from the state fund which was reimbursable does not place any additional burden on Mr. Hurt.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Hurt amended his motion to withdraw his plea to allege ineffective assistance of counsel. He contends his trial lawyer exaggerated the strength of the State's case and withheld from him forensic evidence without which he could not make an informed plea. Mr. Hurt himself had no memory of the events and was dependent on his lawyer for accurate information. Failure to discuss the strengths and weaknesses of the evidence is ineffective assistance. *State v. James*, 48 Wn. App. 353, 362, 739 P.2d 1161 (1987).

Mr. Hurt assigns error to the court's failure to hold an evidentiary hearing on this issue. He asks this court to remand with instructions to the trial court to hold an evidentiary hearing.

We review a claim of ineffective assistance of counsel de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

Ineffective assistance is a manifest injustice sufficient to support a successful challenge to the voluntariness of a guilty plea. *Saas*, 118 Wn.2d at 42. But this issue is procedurally barred.

RCW 10.73.140 restricts serial petitions for postconviction relief. This restriction applies to both the trial court and the appeals court. *State v. Brand*, 120 Wn.2d 365, 369-70, 842 P.2d 470 (1992). The court may not

consider new collateral attacks unless the defendant shows good cause why the new challenge was not raised the first time around. RCW 10.73.140. Mr. Hurt did not file this challenge until months after the original motion. It is therefore subject to the serial postconviction challenge prohibition.

Mr. Hurt offered no reason why this issue was not raised in his original motion. Moreover, the time to present this argument would have been at the motion hearing. Mr. Hurt's new counsel mentioned the issue, but then waived it for lack of sufficient grounds.

## REMEDY

 The general rule is that the remedy for an involuntary plea is to permit the defendant to elect to either withdraw the guilty plea or to specifically enforce the plea agreement. *State v. Tourtellotte*, 88 Wn.2d 579, 585, 564 P.2d 799 (1977). An exception exists where the State would be unduly prejudiced by the remedy chosen. *State v. Miller*, 110 Wn.2d 528, 535-36, 756 P.2d 122 (1988). On remand, the court must, of course, give considerable weight to Mr. Hurt's preference. And the burden is on the State to establish that his choice is unjust. *Id.* at 536.

## CONCLUSION

We reverse the dismissal of Mr. Hurt's motion to withdraw his guilty plea concluding first of all that, under the mailbox rule, it was timely filed. Second, we conclude that the failure to inform Mr. Hurt of the minimum mandatory community placement requirement rendered his guilty plea involuntary. We reject his argument that he was misinformed about restitution. And finally we reject his ineffective assistance of counsel argument as untimely.

BROWN, A.C.J., and KATO, J., concur.