[No. 49080-0-I. Division One. November 25, 2002.]

*In the Matter of the Personal Restraint of* MONTI J. CARLSTAD, *Petitioner.*

448

*Thomas M. Kummerow* (of *Washington Appellate Project*), for petitioner.

*Norm Maleng, Prosecuting Attorney for King County,* and *Daniel J. Clark, Deputy,* for respondent.

KENNEDY, J. — Monti Carlstad, who is incarcerated at a state prison near Spokane, handed his personal restraint petition to prison officials for mailing five days before the expiration of the one-year deadline. However, the petition was not filed at this court until one day after the deadline. Carlstad argues that his petition was timely filed according to the federal mailbox rule, which deems pro se incarcerated defendants' pleadings as "filed" when they are properly deposited into the prison mailing system. *See Houston v. Lack,* 487 U.S. 266, 271, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988). We hold that application of the federal mailbox rule to Carlstad's cases is foreclosed by RAP 16.17 and RAP 18.6(c), which specify that "filing" of a personal restraint petition occurs when it is received by the appellate court. Because Carlstad's petition was not timely filed, we cannot reach the merits of his claim that he is being unlawfully restrained.

## FACTS

On March 28, 1998, police officers arrested Carlstad after he was caught inside an air vent above a Coldwell Banker office in North Bend. Carlstad was wearing gloves and carrying a bag of burglary tools. On June 4, 1999, the State filed an information against Carlstad alleging one count of burglary in the second degree. In the meantime, Bellevue police were investigating a series of burglaries in that area involving the same modus operandi. On November 1, 1999, the State filed a second information against Carlstad alleging two counts of burglary in the second degree. On January 20, 2000, the State added an additional eight counts of burglary in the second degree to the second information based on newly discovered evidence.

On January 20, 2000, Carlstad pleaded guilty to all counts charged in both informations. Under the terms of a plea agreement, the parties agreed that Carlstad's offender score was 30 and that his standard range for each count was 51 to 68 months. The plea agreement also stated that there was a substantial and compelling basis to impose an exceptional sentence pursuant to former RCW 9.94A.390 (2)(I) (1999). The State agreed to recommend no more than 15 years of confinement, and Carlstad agreed to request no less than 13 years. The parties further agreed that if Carlstad were able to provide information that would lead the police reasonably to conclude that he was responsible for an additional 48 unsolved burglaries, the State would not file additional charges stemming from those incidents.

On April 14, 2000, Carlstad moved to withdraw his guilty pleas. Carlstad argued that the pleas were not entered into knowingly, voluntarily, and intelligently because he was under the mistaken impression that he could appeal an exceptional sentence if the court decided to impose it. The court asked defense counsel if his argument would be rendered moot if the court imposed a standard range sentence. Defense counsel argued that it would not. The

State argued that Carlstad had not in fact waived his right to appeal an exceptional sentence, even though such an appeal would likely prove unsuccessful given the terms of his plea bargain. The trial court denied Carlstad's motion to withdraw his pleas, finding that he was fully informed and entered into the plea agreement knowingly and voluntarily.

On the same day, the same court sentenced Carlstad. As per the plea agreement, the State recommended an exceptional sentence of 15 years, and Carlstad asked for a 13-year sentence. The court imposed 68 months for the single charge contained in the first information and 68 months for each of the 10 counts contained in the second information, those sentences to run concurrently with each other but consecutively to the charge contained in the first information. In all, the court sentenced Carlstad to 136 months of confinement, or 11.3 years. The State objected to the court's decision not to impose an exceptional sentence. However, the State advised the trial court that it did have the authority to impose the sentences consecutively or concurrently because they were "separate criminal conduct," and defense counsel agreed. The judgment and sentence was filed on April 17, 2000. Carlstad did not appeal the trial court's denial of his motion to withdraw his guilty plea; neither did he appeal his convictions and sentence.

The parties agree that the one-year statutory deadline for filing the personal restraint petition was April 17, 2001. *See* RCW 10.73.090(1). Acting pro se, Carlstad mailed a personal restraint petition to this court, challenging the trial court's imposition of consecutive sentences. Prison records show that Carlstad handed his personal restraint petition to prison authorities for mailing on Thursday, April 12, 2001, at 5:36 P.M. But the petition did not arrive at this court for filing until Wednesday, April 18, 2001—one day after expiration of the statutory deadline.

## DISCUSSION

In *Houston v. Lack*, 487 U.S. 266, 270-71, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988), the pro se petitioner deposited a

notice of appeal with prison authorities for mailing, and it arrived at the court one day after the 30-day deadline for filing appeals. *Id.* at 268. The United States Supreme Court adopted the "federal mailbox rule" and held that pro se prisoners' notices of appeal to the federal courts are "filed" at the moment of delivery to prison authorities by the prisoner. The *Houston* Court noted that the federal rule for filing appeals did not define "filing"; neither did it designate where or with whom to file the appeal.[1] *Id.* at 272. The Court reasoned that the prison mailbox rule is fair because:

> Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. . . . And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier) . . . , knowing that if the mail goes awry they can personally deliver notice at the last moment . . . *Pro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them. Worse, the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay.

*Id.* at 271.

Federal courts have since extended the federal mailbox rule to the one-year filing deadline for pro se federal habeas petitions, as well as to numerous other situations involving pro se prisoners. *See Burns v. Morton*, 134 F.3d 109, 112-13 (3d Cir. 1998) (summarizing federal cases). "The lesson of these cases is that whenever the rule or statute does not explicitly preclude it, the *Houston* rule is applied." *State v. Hurt*, 107 Wn. App. 816, 824, 27 P.3d 1276 (2001) (citing *Nigro v. Sullivan*, 40 F.3d 990, 994 (9th Cir. 1994)).

▮▮ Because *Houston* interpreted a federal rule, not the Constitution, it is not binding on state courts. However,

---

[1] Fed. R. App. P. 4(c) now expressly incorporates the prison mailbox rule.

many states considering the issue have adopted a prison mailbox rule for various pro se filings.[2] These courts generally find the reasoning of *Houston* persuasive and apply it in the absence of any countervailing statute or court rule. Those states that have declined to adopt the mailbox rule[3] generally have done so on the grounds that a statute or rule governing filing deadlines explicitly precludes it. In addition, some courts do not accept the reasoning of *Houston* or do not feel compelled to apply it in state cases, on policy grounds or because state prisons, unlike federal prisons, may not have a detailed mail record-keeping system.

Division Three of this court recently adopted the federal mailbox rule for incarcerated pro se petitioners filing CrR 7.8 motions for relief from judgment. *See Hurt*, 107 Wn. App. 816. In *Hurt*, the incarcerated defendant, acting pro se, mailed a motion to withdraw his guilty plea four days before the one-year deadline for collateral challenge. However, the trial court did not receive and file the motion until three days after the deadline. *Id*. at 821. The trial court found the motion technically late but nevertheless addressed the merits and denied the motion. *Id*. Hurt appealed, urging Division Three to adopt the federal mailbox rule.

The *Hurt* court observed that CrR 7.8(b), which governs motions for relief from judgment, does not define when such

---

[2] *See, e.g., Ex parte Williams*, 651 So. 2d 569, 571 (Ala. 1992); *Mayer v. State*, 184 Ariz. 242, 908 P.2d 56 (Ct. App. 1995); *In re Jordan*, 4 Cal. 4th 116, 840 P.2d 983, 13 Cal. Rptr. 2d 878 (1992); *Haag v. State*, 591 So. 2d 614, 616-17 (Fla. 1992); *Munson v. State*, 128 Idaho 639, 917 P.2d 796, 799-800 (1996); *Taylor v. McKune*, 25 Kan. App. 2d 283, 962 P.2d 566, 569-70 (1998); *State ex rel. Egana v. State*, 771 So. 2d 638 (La. 2000); *Commonwealth v. Hartsgrove*, 407 Mass. 441, 553 N.E.2d 1299, 1302-03 (1990); *Kellogg v. Journal Communications*, 108 Nev. 474, 835 P.2d 12, 13 (1992); *Commonwealth v. Jones*, 549 Pa. 58, 700 A.2d 423, 425-26 (1997); *State ex rel. Shimkus v. Sondalle*, 2000 WI App 238, 239 Wis. 2d 327, 620 N.W.2d 409, 410-14; *Massaline v. Williams*, 274 Ga. 552, 554 S.E.2d 720, 722 (2001); *Setala v. J.C. Penney Co.*, 97 Haw. 484, 40 P.3d 886 (2002).

[3] *See, e.g., Kinnard v. Carnahan*, 25 S.W.3d 266 (Tex. App. 2000); *State v. Parmar*, 255 Neb. 356, 586 N.W.2d 279 (1998); *Grant v. Senkowski*, 95 N.Y.2d 605, 744 N.E.2d 132, 721 N.Y.S.2d 597 (2001); *State v. Smith*, 123 Ohio App. 3d 48, 702 N.E.2d 1245 (1997); *Norby v. Santiam Corr. Inst.*, 116 Or. App. 239, 841 P.2d 1 (1992); *O'Rourke v. State*, 782 S.W.2d 808 (Mo. Ct. App. 1990); *Carr v. State*, 554 A.2d 778 (Del. 1989); *Key v. State*, 297 Ark. 111, 759 S.W.2d 567 (1988).

a motion is filed; neither does it designate with whom to file it. It merely states that such a motion "shall be made in a reasonable time" and is further subject to RCW 10.73.090. RCW 10.73.090(1) provides that "[n]o petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." Neither CrR 7.8(b) nor RCW 10.73.090 explicitly defines "filing" or specifies where or with whom the filing is to occur.

The *Hurt* court also looked favorably on the defendant's equal protection argument. "A discriminatory denial of the right of appeal violates the equal protection clause of the Fourteenth Amendment." *Hurt*, 107 Wn. App. at 827 (citing *Dowd v. United States ex rel. Cook*, 340 U.S. 206, 208, 71 S. Ct. 262, 95 L. Ed. 215 (1951)). The court also pointed to *Haag v. State*, 591 So. 2d 614 (Fla. 1992) in which the Florida court adopted the *Houston* rule on facts very similar to those in Hurt's case. The Florida court held that the federal mailbox rule protected pro se prisoners' equal protection rights, in that "if two prisoners facing the same deadline delivered documents at the same time to prison officials, and if random circumstances prevented one set of documents from arriving timely, one prisoner would obtain a full hearing and the other would be denied relief." *Hurt*, 107 Wn. App. at 827 (citing *Haag*, 591 So. 2d at 617).[4]

Carlstad urges this court to follow *Houston* and *Hurt*, to apply the mailbox rule in his case, and to hold that his personal restraint petition was timely filed because it was deposited with prison authorities for mailing five days before the one-year statutory deadline for filing. The State argues that RAP 18.6(c), entitled "filing by mail," explicitly precludes application of the mailbox rule. RAP 18.6(c) provides:

---

[4] *But see In re Pers. Restraint of Runyan*, 121 Wn.2d 432, 448-49, 853 P.2d 424 (1993) (RCW 10.73.090 does not classify inmates according to their financial resources, is a reasonable means for controlling the flow of postconviction collateral relief petitions, and does not violate equal protection clauses of the state or federal constitutions).

A brief authorized by Title 10 or Title 13 is timely filed if mailed to the appellate court within the time permitted for filing. Except as provided in rule 17.4, any other paper, including a petition for review, is timely filed only if it is received by the appellate court within the time permitted for filing.

The State argues that because Carlstad's personal restraint petition was not "authorized by Title 10 or Title 13" of the Rules of Appellate Procedure, and does not qualify as a "motion" under RAP 17.4, RAP 18.6(c) clearly and unequivocally provides that Carlstad's personal restraint petition was timely filed only if it was received by the court within the one-year statutory time period. We agree. Title 16 of the Rules of Appellate Procedure governs personal restraint petitions, and RAP 16.17 specifically incorporates RAP 18.6(c) into the special proceedings governed by Title 16.

A court rule "must be given its plain meaning, and when the language is clear a court cannot construe it contrary to its plain language." *City of Kirkland v. Ellis*, 82 Wn. App. 819, 826, 920 P.2d 206 (1996). Carlstad's personal restraint petition arrived at this court for filing one day after the statutory deadline for filing of personal restraint petitions. Accordingly, it was not timely filed.

The State acknowledges the apparently contrary holding of *Hurt*, but contends that *Hurt* is distinguishable. In *Hurt*, the court expressly reasoned that the mailbox rule should apply because neither CrR 7.8 nor RCW 10.73.090 defines "filing" and therefore did not expressly exclude it. But here, RAP 16.17 and RAP 18.6 do define "filing" in a manner that precludes application of the mailbox rule. The State further contends that *Hurt* was short-sighted, in any event, because the court failed to consider what should happen if an incarcerated defendant files a CrR 7.8 motion one day late at the trial court, but the case is then transferred to the Court of Appeals as a personal restraint petition. *See* CrR 7.8(c)(2) (trial court may transfer motion for relief from judgment to Court of Appeals for consideration as a per-

sonal restraint petition if such transfer would serve the ends of justice).

In deciding whether to adopt the *Houston* mailbox rule, state courts do not simply proceed on the basis of policy considerations; rather, they consider whether there are any statutes or rules defining "filing" that would preclude it. If there are no contradictory rules or statutes, and if the court agrees with the reasoning of *Houston*, it generally adopts the mailbox rule. The *Hurt* decision is no exception; it was specifically based on the court's observation that CrR 7.8 and RCW 10.73.090 do not define "filing" and therefore did not specifically preclude application of the mailbox rule. However, RAP 16.17 and RAP 18.6(c) unambiguously define "filing" in a manner that precludes the mailbox rule for filing of personal restraint petitions.

Moreover, with all due respect, we think *Hurt* was incorrectly decided. In *State v. Robinson*, 104 Wn. App. 657, 17 P.3d 653, *review denied*, 145 Wn.2d 1002 (2001), the defendant filed a motion to withdraw plea of guilty under CrR 7.8 after she had been convicted and sentenced. *Id.* at 661. She mailed the motion three days before the one-year statutory deadline for collateral attacks, RCW 10.73.090, but the court clerk file-stamped the motion three days after the deadline. *Id.* Robinson argued that her motion should be treated as timely filed because it was mailed in sufficient time to ordinarily reach the court in time, but arrived late solely due to delay caused by postal authorities. *Id.* at 664-65. This court refused to fashion a rule that a motion is timely filed if postmarked three days before the statutory deadline:

> CrR 8.4 provides that CR 5 shall govern service and filing of written motions in criminal proceedings. CR 5(b)(2)(A) contains a provision that service by mail shall be deemed complete on the third day following proper mailing, but CR 5(e) which defines filing with the court contains no such provision. Instead, CR 5(e) provides that filing "shall be made by filing [pleadings and other papers] with the clerk of the court . . . ." Rule making is a function of our State Supreme Court and not of this intermediate appellate court. We cannot rewrite CR 5(e).

*Id.* at 665.[5] Similarly, CR 5 governed service and filing of Hurt's CrR 7.8 motion. And CR 5(e) does contain a definition of filing that is at odds with the federal mailbox rule. The *Hurt* court did not mention CrR 8.4 or CR 5(e) when it decided that there were no relevant rules or statutes defining "filing" that precluded application of the mailbox rule.[6]

We recognize that incarcerated pro se petitioners are in a markedly different position from other litigants, who have the options of tracking their submissions to be sure they are timely filed and of personally depositing them at the court if necessary. Incarcerated pro se petitioners are at the mercy not only of the postal service but also of prison mailing authorities who "may have every incentive to delay." *Houston*, 487 U.S. at 271. Nevertheless, the clear mandate of RAP 18.6(c) precludes application of the federal mailbox rule. Moreover, "RCW 10.73.090 imposes a constitutionally valid 'time limit' as a means of controlling the flow of postconviction collateral relief petitions." *Shumway v. Payne*, 136 Wn.2d 383, 399, 964 P.2d 349 (1998). Washington courts "have generally strictly construed RCW 10.73.090 in light of the legislative intent to control the flow of postconviction collateral relief petitions and to uphold the principles of finality of litigation." *Hurt*, 107 Wn. App. at 825. "[T]he very purpose of RCW 10.73.090 . . . is to encourage prisoners to bring their collateral attacks promptly." *In re Pers. Restraint of Runyan*, 121 Wn.2d 432, 450, 853 P.2d 424 (1993).

Given our conclusion that Washington's rules of appellate procedure foreclose application of the federal mailbox rule, incarcerated pro se petitioners must account for possible delays by submitting their personal restraint

---

[5] RAP 18.5(c) also provides that papers required or permitted to be filed with the appellate court must be filed with the clerk. And RAP 16.17 specifically incorporates RAP 18.5(c) into Title 16 RAP governing personal restraint petitions.

[6] The *Hurt* court cited this court's opinion in *Robinson* for a different proposition, i.e., that there can be no substantial compliance with deadlines, which are actually met or they are not. *Hurt*, 107 Wn. App. at 825 (citing *Robinson*, 104 Wn. App. at 666-67). The federal mailbox rule was not an issue in *Robinson*.

petitions to prison authorities well before the filing deadlines. We wish to emphasize that the doctrine of equitable tolling could be applied to excuse a late filing in the most egregious circumstances. *See Robinson*, 104 Wn. App. at 665-68. But those circumstances are not present here. Carlstad submitted his petition to prison authorities late on a Thursday afternoon, five days before the expiration of the one-year statutory deadline. There is no indication that the prison authorities unduly delayed mailing the petition to this court, deliberately or otherwise. And given the bright-line definition of "filing" in RAP 18.6(c), the policy considerations favoring early filing of motions and petitions collaterally attacking criminal judgments and sentences, and our decision in *Robinson*, we are not inclined to invoke RAP 1.2(a)[7] or (c),[8] or RAP 18.8(a),[9] in order to waive RAP 18.6(c) and thereby permit application of the mailbox rule. To do so would be tantamount to waiving the time limitation of RCW 10.73.090(1). None of these court rules grants us the authority to extend or waive a statutory time limit. *Shumway*, 136 Wn.2d at 399.

Because we decline to adopt the federal mailbox rule in this case, we hold that Carlstad's personal restraint petition was not timely filed, and we cannot reach the merits of his claim.

AGID and APPELWICK, JJ., concur.

Review granted at 149 Wn.2d 1008 (2003).

---

[7] RAP 1.2(a): "**Interpretation.** These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands, subject to the restrictions in rule 18.8(b)."

[8] RAP 1.2(c): "**Waiver.** The appellate court may waive or alter the provisions of any of these rules in order to serve the ends of justice, subject to the restrictions in rule 18.8(b) and (c)."

[9] RAP 18.8(a): "**Generally.** The appellate court may, on its own initiative or on motion of a party, waive or alter the provisions of any of these rules and enlarge or shorten the time within which an act must be done in a particular case in order to serve the ends of justice, subject to the restrictions in sections (b) and (c)."