[Nos. 73565-4; 73775-4. En Banc.]
Argued June 26, 2003. Decided December 4, 2003.

*In the Matter of the Personal Restraint of* MONTI CARLSTAD, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent*, v. BRIAN McLEAN, *Petitioner.*

*Thomas M. Kummerow* and *Maureen M. Cyr* (of *Washington Appellate Project*), for petitioners.

*Norm Maleng, Prosecuting Attorney for King County*, and *Daniel J. Clark, Deputy*, and *David S. McEachran, Prosecuting Attorney for Whatcom County,* and *MacDuffie Setter, Laura D. Hayes*, and *Kimberly A. Thulin, Deputies*, for respondent.

*Mark A. Wilner* and *David Zuckerman* on behalf of American Civil Liberties Union of Washington, amicus curiae.

FAIRHURST, J. — Washington Court Rules mandate that a collateral attack on a judgment and sentence (judgment) in a criminal case must be made within one year after the judgment becomes final. Both Monti Carlstad and Brian McLean were in prison and acting pro se when they filed separate collateral attacks on their judgments. Carlstad filed a personal restraint petition (PRP), and McLean filed a motion to withdraw his guilty plea. Each deposited the necessary pleadings with prison officials prior to the expiration date for their collateral attacks. In both cases,

however, the pleadings were not received by the respective courts until after the expiration of the one-year time limit. As a result, both the PRP and motion were dismissed as untimely. The issue presented is whether this court should adopt, through case law, the mailbox rule for pro se prisoners and consider the pleadings filed upon delivery to prison officials. We decline to adopt the mailbox rule through case law.

## FACTS

### In the Matter of the Personal Restraint of Carlstad

Monti Carlstad accepted a plea agreement and pleaded guilty to numerous burglary charges. He was sentenced to 136 months' confinement. The judgment was filed on April 17, 2000. Carlstad received notice pursuant to RCW 10-.73.110 that he had one year from April 17, 2000, in which to file a collateral attack on the judgment, subject to the limitations of RCW 10.73.090 and 10.73.100.

On Thursday, April 12, 2001, at 5:36 P.M., Carlstad handed his PRP to prison officials for mailing. The PRP arrived at the Court of Appeals on Wednesday, April 18, 2001—one day after expiration of the statutory deadline. The Court of Appeals dismissed his PRP because it was not timely filed. *In re Pers. Restraint of Carlstad*, 114 Wn. App. 447, 458, 58 P.3d 301 (2002). Carlstad appealed to this court and we granted discretionary review. *In re Pers. Restraint of Carlstad*, 149 Wn.2d 1008, 67 P.3d 1097 (2003).

### State v. McLean

Brian McLean pleaded guilty to charges of first degree assault, first degree robbery, and other charges. At sentencing, McLean moved to merge the first degree assault and first degree robbery convictions, contending that they encompassed the same criminal conduct. The trial court denied his motion, the Court of Appeals affirmed, *State v. McLean*, noted at 96 Wn. App. 1011 (1999), and this court

denied review. *State v. McLean,* 139 Wn.2d 1018, 994 P.2d 846 (2000). His judgment was entered on January 21, 2000.

On the evening of Thursday, January 18, 2001, McLean placed a motion to withdraw his guilty plea under the door of the prison law librarian's office. The librarian logged the motion into the prison log book on Friday, January 19, 2001. The motion was postmarked Monday, January 22, 2001, and received at the Whatcom County Superior Court on Wednesday, January 24, 2001. The superior court dismissed the motion because it was not filed within one year of the judgment becoming final, and the Court of Appeals affirmed. *State v. McLean,* noted at 115 Wn. App. 1030 (2003). McLean appealed to this court and we granted discretionary review. *State v. McLean,* 149 Wn.2d 1008, 67 P.3d 1097 (2003).

## ISSUE

Should this court adopt, through case law, the mailbox rule for pro se prisoners and consider their collateral attacks on a judgment and sentence timely filed if delivered to prison officials on or before the one-year collateral attack time limit?

## ANALYSIS

### A. Federal Mailbox Rule

Carlstad and McLean ask us to adopt a mailbox rule similar to that created by the United States Supreme Court in *Houston v. Lack,* 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988). In *Houston,* after the federal district court dismissed a pro se prisoner's writ for habeas corpus, the prisoner delivered a notice of appeal for mailing to the district court to prison officials prior to the statutory deadline for such appeals. *Id.* at 268. However, the district court stamped the notice "filed" one day after the statutory deadline and dismissed his appeal as untimely. *Id.* at 268-69. The United States Supreme Court interpreted the

Federal Rules of Appellate Procedure and determined that a notice of appeal would be considered filed at the moment a pro se prisoner delivers it to prison officials. *Id.* at 268. The Court determined that the applicable statute, 28 U.S.C. § 2107,[1] did not define when a notice of appeal had been "filed," nor did it indicate with whom it must be filed. *Houston*, 487 U.S. at 272. The Court then turned to the Federal Rules of Appellate Procedure, which required "filing" with the clerk of the court within 30 days.[2] The Court noted that while it was undisputed that the notice had to be delivered to the clerk of the district court, the question remained as to how to determine at what moment a "filing" had occurred. *Houston*, 487 U.S. at 272-73.

The Court, while acknowledging the general rule that the court clerk's receipt of the pleadings was usually considered the moment of filing, found that the general rule should not apply to pro se prisoners. *Id.* at 275. Whereas a civil litigant may choose to risk tardiness by mailing a notice of appeal, a pro se prisoner's only option for filing papers with a court is by handing them over to prison officials to mail. *Id.* The Court noted that a pro se prisoner "has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay." *Id.* at 271. The Court recognized that, although the mailbox rule had been rejected in other contexts because it would increase disputes and uncertainty over when a filing occurred, pro se prisoners could avoid such disputes because prison officials had well-developed procedures for recording the date and time

---

[1] "[N]o appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree." 28 U.S.C. § 2107(a).

[2] Former Fed. R. App. P. 3(a) (1986) provided: "An appeal permitted by law as of right from a district court to a court of appeals shall be taken by filing a notice of appeal with the clerk of the district court within the time allowed by Rule 4." Former Fed. R. App. P. 4(a)(1) (1979) provided: "In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from. . . ."

at which they received papers for mailing. *Id.* at 275. In *Houston*, the Court adopted the mailbox rule for pro se prisoners.[3]

B. *Previous Washington Decisions Addressing the Mailbox Rule*

After *Houston*, and before the appeals in these cases, two Court of Appeals divisions reached different conclusions regarding adoption of the mailbox rule.

In *State v. Robinson*, Division One of the Court of Appeals rejected the mailbox rule. *State v. Robinson*, 104 Wn. App. 657, 17 P.3d 653 (2001). In *Robinson*, the defendant argued that her motion to withdraw guilty plea was timely filed because it was mailed three days before the one-year deadline. *Id.* at 660. The *Robinson* court turned to CrR 8.4, which states: "CR 5 shall govern service and filing of written motions (except those heard ex parte) in criminal causes." *Id.* at 665. CR 5 is entitled: "Service and Filing of Pleadings and Other Papers." The court then noted that while CR 5(b)(2)(A) provides that "service shall be deemed complete upon the third day following the day upon which they are placed in the mail . . . ," CR 5(e) contains no such provision for "filing" with the court. *Id.* Instead, it simply states:

> The filing of pleadings and other papers with the court as required by these rules shall be made by filing them with the clerk of the court . . . .

CR 5(e). The court rejected the mailbox rule, impliedly reasoning that filing occurs upon receipt of the papers by the clerk of the court. *Robinson*, 104 Wn. App. at 665.

Several months later, Division Three of the Court of Appeals, citing *Houston v. Lack*, approved the mailbox rule for a pro se prisoner who delivered a motion to withdraw

---

[3] The Federal Court Rules were amended to incorporate the *Houston* decision, so that notices of appeal are considered timely when prisoners deposit them in the institution's mail system on or before the last day for filing. FED. R. APP. P. 4(c); *see also Smith v. Conner*, 250 F.3d 277, 279 n.11 (5th Cir. 2001) (noting that Fed. R. App. P. 4 was amended to incorporate *Houston* mailbox rule).

guilty plea to prison officials for mailing before the one-year deadline, but it was received by the court after the deadline. *State v. Hurt*, 107 Wn. App. 816, 27 P.3d 1276 (2001). The *Hurt* court, believing there was no Washington case directly on point (and not mentioning *Robinson*), turned to analogous federal collateral attack time limitation law for guidance, finding it to be highly persuasive. *Id.* at 822-23. The court reiterated that prisoners have no choice but to deposit their appeals in the hands of prison officials, who may not mail them in a timely fashion. *Id.* at 823. The court acknowledged that there is a strong public interest in finality of judgment, but that it was difficult to see how those interests would be affected by adding a few days to the timeliness of only a handful of cases. *Id.* at 826-27. The court also noted that concern for a pro se prisoner's equal protection rights also compelled its decision. *Id.* at 827.

## C. Carlstad and McLean

Carlstad and McLean filed different types of collateral attacks on their judgments. Carlstad filed a PRP, while McLean filed a motion to withdraw his guilty plea. A PRP is filed in the Court of Appeals, and a motion to withdraw guilty plea is filed in superior court.

*1. Carlstad PRP.* PRPs are special proceedings over which the Court of Appeals has original jurisdiction (concurrent with the Supreme Court) and are governed by the Rules of Appellate Procedure. RAP 1.1(e), 16.3(c), 16.17.

A PRP attacking a judgment must be filed within one year of the petitioner's judgment becoming final. RCW 10.73.090(1). Carlstad's judgment was final on April 17, 2000. Therefore, the one-year deadline for him to file his PRP was April 17, 2001.

RAP 18.6 determines when a PRP may be considered "filed." RAP 18.5, which applies to service and filing of PRPs, states that "[p]apers required or permitted to be filed in the appellate court must be filed with the clerk." RAP 18.5(c). Although the mailbox rule is available for the filing of some documents, it is not available when filing a PRP:

A brief authorized by Title 10 ["Briefs"] or Title 13 ["Review by the Supreme Court of Court of Appeals Decision"] is timely filed if mailed to the appellate court within the time permitted for filing. Except as provided in rule 17.4 ["Filing and Service of Motion—Answer to Motion"], *any other paper, including a petition for review, is timely filed only if it is received by the appellate court within the time permitted for filing.*

RAP 18.6(c) (emphasis added).

 Carlstad filed his PRP alleging unlawful restraint pursuant to RAP 16.4 (b) and (c). Because the filing of his PRP is not based on Title 10, Title 13, or RAP 17.4, under the plain language of RAP 18.6(c), his PRP is "timely filed only if it is received by the appellate court within the time permitted for filing." Carlstad's PRP was not stamped received by the Court of Appeals until April 18, 2001, one day after the "time permitted for filing."

Here, the Court of Appeals specifically rejected the *Hurt* decision that adopted the mailbox rule. *Carlstad,* 114 Wn. App. at 453-54. The Court of Appeals first noted that *Hurt* was inapposite because it did not involve RAP 16.17 and RAP 18.6(c), which specifically preclude application of the mailbox rule for PRPs. *Id.* at 456. The Court of Appeals relied on its *Robinson* reasoning and noted that *Hurt* mentioned neither CrR 8.4 nor CR 5(e). *Id.* at 456-57. Carlstad's PRP was not timely according to the plain language of the Rules of Appellate Procedure. We, therefore, affirm the Court of Appeals' dismissal of Carlstad's PRP.

*2. McLean motion to withdraw guilty plea.* A motion to withdraw guilty plea is filed in superior court and, if filed after the judgment is final, is governed by CrR 7.8. CrR 4.2(f). To obtain relief from the judgment, a defendant must make a motion stating the grounds upon which relief is requested. CrR 7.8(c)(1). The superior court may transfer the motion to the Court of Appeals for consideration as a PRP "if such transfer would serve the ends of justice." CrR 7.8(c)(2).

Like a PRP attacking a judgment, a motion to withdraw a guilty plea must be filed within one year after the judgment becomes final. RCW 10.73.090; CrR 7.8(b). McLean's judgment was final on January 21, 2000. The deadline for his motion to withdraw guilty plea was January 21, 2001. Because January 21, 2001 fell on a Sunday, his deadline was extended to Monday, January 22, 2001. CrR 8.1; CR 6(a).

■ McLean asserts that CR 5(e) defines where a paper should be filed ("with the clerk of the court"), but, unlike RAP 18.6(c), it does not define when a filing occurs. McLean contends that CR 5(e) is almost identical to the federal rule at issue in *Houston v. Lack*. But the court rule analyzed in *Houston* differs from the court rule at issue in *McLean*. The *Houston* Court based its decision on the fact that the federal rules did not set forth "criteria for determining the moment at which the 'filing' has occurred." *Houston*, 487 U.S. at 273. The *Houston* Court analyzed Fed. R. App. P. 3(a), which defines "appeal" without defining "filing." This case concerns CR 5(e), which is the definition of "filing." Filing occurs when the papers are filed with the clerk of the court, not when papers are sent to the clerk of the court. Elsewhere in CR 5, a version of the mailbox rule is explicitly adopted for the service of papers. CR 5(b)(2)(A). That mailbox rule could just as easily have been adopted for filing papers with the court, but it was not. Interpreting CR 5(e) in conjunction with CR 5(b)(2)(A) leads us to the conclusion that the mailbox rule for pro se prisoners would be inconsistent with our court rules.[4]

The Court of Appeals in *McLean* rejected the *Hurt* decision as well. *McLean*, noted at 115 Wn. App. 1030, 2003 WL 264749, at *2. The court agreed with *Carlstad*'s analysis "that CR 5(e), particularly considered in context with CR 5(b)(2)(A), provides a definition of filing inconsistent with

---

[4] We note that if a mailbox rule for pro se prisoners is desirable, the rule should be adopted through the normal rule-making process. That process enables all interested and affected parties to participate in creating the rule. Foisting the rule upon courts and parties by judicial fiat could lead to unforeseen consequences.

the federal mailbox rule." *Id.* Although both *Hurt* and *McLean* addressed motions to withdraw a guilty plea, the *McLean* court ultimately rejected *Hurt* because it failed to consider CrR 8.4, CR 5, and *Robinson*. *Id.* We agree with the Court of Appeals and affirm the dismissal of McLean's motion to withdraw his guilty plea because it was not timely filed.

## D. Equitable Tolling

After rejecting the mailbox rule, the Court of Appeals in *Carlstad* noted that the equitable tolling doctrine still provides pro se prisoners potential relief. *Carlstad*, 114 Wn. App. at 458. Equitable tolling is a remedy that "permits a court to allow an action to proceed when justice requires it, even though a statutory time period has nominally elapsed." *State v. Duvall*, 86 Wn. App. 871, 874, 940 P.2d 671 (1997). Equitable tolling is generally used only sparingly, when the plaintiff exercises diligence and there is evidence of bad faith, deception, or false assurances by the defendant. *Id.* at 875. This court has yet to decide if equitable tolling is available in criminal cases. *State v. Littlefair*, 112 Wn. App. 749, 760, 51 P.3d 116 (2002), *review denied*, 149 Wn.2d 1020, 72 P.3d 761 (2003) (noting that at least three Court of Appeals criminal cases have applied equitable tolling).

Both Carlstad and McLean seek equitable tolling as an alternative to adoption of the mailbox rule. We need not decide that issue now because equitable tolling would be unavailable for either Carlstad or McLean because neither has demonstrated that prison officials acted with bad faith, deception, or false assurances.

## CONCLUSION

Neither RAP 18.6(c), which governs the timely filing of a PRP, nor CR 5(e), which governs the timely filing of a motion to withdraw guilty plea, allows for the mailbox rule. Appellants have also shown no misfeasance on the part of

prison officials to warrant application of the doctrine of equitable tolling. Accordingly, we affirm the Court of Appeals in both *Carlstad* and *McLean*.

JOHNSON, MADSEN, IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.

SANDERS, J. (dissenting) — The majority's analysis fails to appreciate the uniquely burdensome obstacles faced by pro se prisoners attempting to challenge their criminal convictions. In order to put pro se prisoners in a similar position as nonincarcerated petitioners or those with counsel, each of whom can ensure a last-minute filing will be timely made, I would adopt a mailbox rule for pleadings filed by pro se prisoners seeking postconviction relief. Accordingly I would interpret the term "filed" in RCW 10.73.090(1) to mean that a pro se prisoner's pleadings are filed upon delivery to prison authorities for forwarding to the appropriate court.

In *Houston v. Lack*, 487 U.S. 266, 270-72, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988), the United States Supreme Court explained at length why notices of appeal prepared by pro se prisoners should be deemed filed at the moment of delivery to prison authorities for mailing. The Court began its analysis by emphasizing that prisoners seeking to appeal without aid of legal counsel are in a "unique" situation. *Id.* at 270. The Court explained:

> Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at

> the last moment . . . . [T]he *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. . . . Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities—and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

*Id.* at 271-72. Due to these concerns the Court adopted a mailbox rule for pro se prisoners filing notices of appeal in federal court. *Id.* at 271-76.

The Supreme Court's reasoning is highly persuasive and should not be ignored. In addition to the federal courts, other state courts have adopted similar mailbox rules after finding pro se prisoners in those states face challenges comparable to those described at length in *Houston*. *See, e.g., Ex parte Williams*, 651 So. 2d 569, 571 (Ala. 1992); *Mayer v. State*, 184 Ariz. 242, 243-45, 908 P.2d 56 (Ct. App. 1995); *In re Habeas Corpus of Jordan*, 4 Cal. 4th 116, 128, 840 P.2d 983, 13 Cal. Rptr. 2d 878 (1992); *Haag v. State*, 591 So. 2d 614, 616-17 (Fla. 1992); *Munson v. State*, 128 Idaho 639, 642-43, 917 P.2d 796 (1996); *Taylor v. McKune*, 25 Kan. App. 2d 283, 286-88, 962 P.2d 566 (1998); *Sykes v. State*, 757 So. 2d 997, ¶¶ 7-15 (Miss. 2000); *Commonwealth v. Jones*, 549 Pa. 58, 61-64, 700 A.2d 423 (1997). Pro se prisoners in Washington are no different. *See State v. Theobald*, 78 Wn.2d 184, 185-86, 470 P.2d 188 (1970) (taking judicial notice of limited time and resources available to prisoners acting pro se).

Nonetheless the majority discounts the persuasive reasoning in *Houston* and attempts to distinguish the case by claiming that the rules governing filing of collateral attacks under RCW 10.73.090, unlike the federal rules considered in *Houston*, preclude adoption of the mailbox rule for pro se prisoners. Those rules, however, are not as clear and unambiguous in precluding adoption of the mailbox rule as

the majority contends. This is especially true here where the majority's strict reading of the rules unfairly denies Carlstad and McLean a meaningful opportunity to challenge their criminal convictions.

I. PERSONAL RESTRAINT PETITION OF CARLSTAD

Carlstad's personal restraint petition (PRP) is a motion for collateral attack on a judgment in a criminal case, which must be filed within one year of the judgment becoming final. RCW 10.73.090(1). RCW 10.73.090 does not define the term "filed" and does not specify when or how a filing occurs. To fill this gap the majority looks to RAP 18.6(c), which, according to the majority, provides a PRP "is 'timely filed only if it is received by the appellate court within the time permitted for filing.'" Majority at 591. As such the majority concludes that RAP 18.6(c) prohibits adopting the mailbox rule for PRPs. Majority at 591.

However, in light of the procedural hurdles faced by pro se prisoners who lack control over the filing of their pleadings, RAP 18.6(c) need not be so rigidly interpreted. RAP 1.2(a), which governs this court's interpretation of the Rules of Appellate Procedure, provides:

> These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands, subject to the restrictions in rule 18.8(b).

Similarly RAP 1.2(c) provides that "[t]he appellate court may waive or alter the provisions of any of these rules in order to serve the ends of justice, subject to the restrictions in rule 18.8(b) and (c)." Finally, RAP 18.8(a) states "[t]he appellate court may . . . waive or alter the provisions of any of these rules and enlarge or shorten the time within which an act must be done in a particular case in order to serve the ends of justice, subject to the restrictions in sections (b) and (c)." These rules remain unrestricted here as neither RAP 18.8(b) nor RAP 18.8(c) applies in this case.

Together RAP 1.2(a), RAP 1.2(c), and RAP 18.8(a) make clear that an appellate court should liberally interpret the Rules of Appellate Procedure and alter any provision included therein when necessary to promote justice and to consider cases and issues on their merits. *See State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995) (noting the discretion provided to an appellate court in RAP 1.2(a) "should normally be exercised unless there are compelling reasons not to do so"); *Weeks v. Chief of Wash. State Patrol*, 96 Wn.2d 893, 896, 639 P.2d 732 (1982) (quoting RAP 1.2(a) and observing that "[a]pplying strict form would defeat the purpose of the rules to 'promote justice and facilitate the decision of cases on the merits' "). Strictly construing RAP 18.6(c) to dispose of Carlstad's PRP solely because, due to circumstances beyond his control, his PRP did not arrive at the Court of Appeals until one day after the one-year deadline, usurps this view.

## II. McLean Motion to Withdraw Guilty Plea

As with a PRP, a motion to withdraw a guilty plea must be made within one year after judgment becomes final. *See* RCW 10.73.090(1). McLean's motion to withdraw his guilty plea is governed by CrR 7.8 because the motion was brought after judgment was entered. CrR 4.2(f). CrR 7.8 does not define when a filing occurs, providing only that a motion "shall be made within a reasonable time" and is subject to RCW 10.73.090. CrR 7.8(b). CrR 8.4 provides that CR 5 governs service and filing of written motions in criminal matters. According to CR 5(e), which defines filing, "[t]he filing of pleadings and other papers with the court as required by these rules shall be made by filing them with the clerk of the court." Although CR 5(e) defines *how* a filing occurs, it does not define *when* a filing occurs.

The majority concludes that because a version of the mailbox rule appears in CR 5(b)(2)(A), governing service of papers, but does not appear in CR 5(e), "the mailbox rule for pro se prisoners would be inconsistent with our court rules." Majority at 592. As with the majority's inappropriately

narrow reading of the Rules of Appellate Procedure in Carlstad's case, such a rigid reading of the court rules is similarly improper here. CrR 1.2 states "[t]hese rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration, effective justice, and the elimination of unjustifiable expense and delay."

The policy expressed in CrR 1.2 is that the Criminal Rules should be interpreted so as to promote justice and provide for the just determination of criminal proceedings. Straining to construe CR 5(e) to preclude application of the mailbox rule so as to dispose of McLean's motion is directly contrary to this principle of interpretation. It is hardly just to dismiss McLean's motion as untimely where it was delivered to prison authorities three days before the one-year filing deadline but was not received by the Whatcom County Superior Court until three days after the deadline passed. Forcing McLean to suffer the consequences of a delay he could not control or avoid unfairly denies him a just determination of the merits of his case.

The United States Supreme Court's reasoning in *Houston* is persuasive and compelling. Fairness and justice require an interpretation of the term "filed" in RCW 10.73.090 to include a mailbox rule for pro se prisoners. Neither RAP 18.6(c), CrR 7.8, nor CR 5 precludes such an interpretation. As such, pleadings filed by pro se prisoners under RCW 10.73.090 should be deemed filed when delivered to prison authorities for forwarding to the appropriate court and not upon actual receipt.

Therefore, I respectfully dissent.

ALEXANDER, C.J., concurs with SANDERS, J.

Reconsideration denied February 18, 2004.